| | |
|---|---|
| THE ARBOR AT LAKE JAMES PROPERTY OWNERS' ASSOCIATION INC., § § § § | |
| Plaintiff, § | COMPLAINT |
| § | |
| vs. § | (JURY TRIAL DEMANDED) |
| § | |
| PHILADELPHIA INDEMNITY INSURANCE COMPANY, § § § | |
| § | |
| Defendant. § | |

## PLAINTIFF'S COMPLAINT

Plaintiff hereby files this Complaint against Defendant and in support of the foregoing causes of action Plaintiff respectfully shows the Court the following:

### THE PARTIES

1. Plaintiff is a non-profit corporation duly organized and existing under and by virtue of the laws of the State of North Carolina and located in McDowell County, North Carolina.

2. Upon information and belief, ("Defendant" or "Insurer"), is a Pennsylvania insurance company with its principal place of business located in Pennsylvania.

3. Upon information and belief, Defendant is licensed and authorized to transact insurance business in the State of North Carolina by the North Carolina Department of Insurance.

### JURISDICTION AND VENUE

4. McDowell County Superior Court is the proper trial division for this case as the amount in controversy exceeds Twenty-Five Thousand Dollars ($25,000).

5. Jurisdiction and venue are otherwise properly held with this Honorable Court.

## FACTUAL BACKGROUND

6. At all times relevant, including as of September 26-30, 2024, Plaintiff was the owner of real property and improvements located at Lake James, North Carolina. Plaintiff was also the owner and manager of approximately ninety-two (92) boat slips located within the Lake James water course. The boat slips are further shown in the below image:



7. The boat slips referenced above were attached to Plaintiff's premises, more specifically Plaintiff's real property identifiable by McDowell County parcel identification number 171300907663, by five independent walkways, or gangways, such that walkway number one provided access to approximately fourteen boat slips; walkway number two provided access to

2

approximately fourteen boat slips; walkway number three provided access to approximately twelve boat slips; walkway number four provided access to approximately twenty-two boat slips; and walkway number five provided access to approximately thirty boat slips.

8. On or about February 16, 2024, Defendant issued Plaintiff a commercial lines policy identified as policy number PHPK2642726 ("Policy").

9. The Policy period ran from February 16, 2024 to February 16, 2025.

10. The Policy was issued and delivered to Plaintiff in McDowell County, North Carolina.

11. At all times relevant, Plaintiff timely paid the premiums due for the coverages under the Policy.

12. The Policy provides coverage for damage to Plaintiff's Building and Personal Property pursuant to coverage Form CP 00 10.

13. Subject to endorsement PI-CP-SUPP-SCH-BLNK 1, the Policy provides coverage to damages up to $125,280.00.

14. Pursuant to an endorsement on the Policy (endorsement PI-PU-3) and further titled REDEFINITION OF BUILDING PROPERTY, "Boat Slip" was added as Covered Property subject to coverage under the Building and Personal Property endorsement.

15. Pursuant to endorsement PI-CP-SUPP-SCH 1, "Boat Slip" (identified as building number 007) has replacement cost coverage up to the Blanket ("BKT") amount of coverage which is $125,280, subject to a $2,500 deductible.

16. Pursuant to endorsement PI-CP-SUPP-SCH 1, "Boat Slip" (identified as building number 007) is subject to the "Cause of Loss Special Form" which is identified as Form CP 10 30 09 017.

3

17. Pursuant to the Cause of Loss Special Form, a covered cause of loss means direct physical loss to the boat slips, regardless of the cause, unless the loss is excluded or limited, thus making the Policy what is commonly called an "all-risk" or "open-perils" Policy.

18. Pursuant to the Cause of Loss Special Form, the Policy excludes loss caused by "water" with the term "water" meaning: "(1) Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge). (2) Mudslide or mudflow; (3) Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment; (4) Water under the ground surface pressing on, or flowing or seeping through: (a) Foundations, walls, floors or paved surfaces; (b) Basements, whether paved or not; or (c) Doors, windows or other openings; or (5) Waterborne material carried or otherwise moved by any of the water referred to in Paragraph (1), (3), or (4), or material carried or otherwise moved by mudslide or mudflow."

19. The Policy and the Cause of Loss Special Form do not define any of the following terms: "flood," "surface water," "waves," "tidal wave," "tsunami," "tides," "tidal water," "overflow of any body of water," or "storm surge."

20. The Policy was further subject to an endorsement titled "Elite Property Enhancement: Homeowner Associations & Planned Unit Developments" (hereinafter "Elite Property Endorsement") which is further identifiable as Form PI-EPE-PU-NC.

21. Pursuant to the Elite Property Endorsement, the Cause of Loss Special Form is amended and superseded to redescribe the term "water" to mean "a. Flood, surface water, waves, tides, tidal waves, overflow of any body of water, or their spray, all whether driven by wind or not; b. Mudslide or overflow; c. Water that backs up or overflows from a sewer, drain or sump, or d.

4

Water under the ground surface pressing on, or flowing or seeping through: (a) foundations, walls, floors or paved surfaces; (b) basements, whether paved or not; or (c) doors, windows or other openings."

22. Among other consequences of the redescription of the term "water" in the Elite Property Endorsement, the term "storm surge" is no longer included in the description of "water' and, therefore, water damage caused by "storm surge" is no longer an excluded cause of loss under the Cause of Loss Special Form.

23. The Policy and the Elite Property Endorsement do not define any of the following terms: "flood," "surface water," "waves," "tides," "tidal waves," or "overflow of any body of water."

24. Pursuant to the Elite Property Endorsement, "water" is a covered cause of loss but limited to $30,000 for any one occurrence.

25. As a result of the Elite Property Endorsement, if the "boat slips" are damaged as a result of "water," as the term "water" is described in the Elite Property Endorsement, the coverage for "boat slips" is limited to $30,000 per occurrence. If the "boat slips" are damaged as the result of some other peril that is not excluded, or as the result of "water" in some manner that is not included as "water" damage under the Elite Property Endorsement, the coverage for the "boat slips" is $125,280 per occurrence.

26. On or about September 28 and 29, 2024, each boat slip experienced a total loss due to the effect of the rapid current of water moving across, and downstream, through Lake James.

27. The loss of the boat slips was not simultaneous but, rather, each of the five above-described walkways, and the atached boat slips, were lost at different times on September 28, and 29, 2024.

28. The loss to each boat slip occurred during the policy period and within the coverage territory.

29. The damage to the boat slips is at least $700,000.00.

30. Plaintiff has made a timely claim to Defendant for the damage to the boat slips (the "Claim").

31. Upon being notified of the Claim, Defendant did not send, and has not sent, anyone to investigate the Claim, the cause of loss, or inspect the damage to the boat slips.

32. In response to Plaintiff's Claim, Defendant sent Plaintiff a check for $30,000 presumably contending that the "boat slips" were damaged in one occurrence by "water" as the term "water" is described in the Elite Property Endorsement.

33. Defendant's payment to Plaintiff in the amount of $30,000 was not supported by a proper investigation of the Claim.

34. At the time of the $30,000 payment, Defendant had not cited any facts in support of its decision to only pay $30,000 for the Claim.

35. The boat slips were damaged by the rapid current on Lake James and not by "flood," "surface water," "waves," "tides," "tidal waves," or "overflow of any body of water."

36. The coverage for the damaged boat slips is at least $125,280 per occurrence.

37. The payment by Defendant in the amount $30,000 is below the amount of coverage for the Claim.

38. The payment by Defendant in the amount $30,000 is below the amount of damage to the boat slips.

39. Subsequent to Plaintiff's initial submission of the Claim, and Defendant's decision to only pay Plaintiff $30,000 for the Claim, Defendant, acting though its attorney and/or

representative, stated its position regarding the cause of the damage to the boat slips. *See Letter attached hereto as Exhibit 1*.

40. As indicated in Exhibit 1, Defendant contends that the damage to the boat slips was the result of "flood."

41. Defendant further contends that "the docks [boat slips] were washed from their initial location and came to rest 'downstream,' of their original location, on dry land where the flood waters had receded." *See Exhibit 1 at p. 2*.

42. Defendant's assertion as to the manner by which the boat slips were damaged is incorrect and the boat slips were not washed onto dry land where flood waters had receded.

43. Defendant's analysis that the boat slips were damaged by "flood" is improper and incorrect and the result of an improper and incomplete investigation of the Claim.

44. Defendant's analysis that the boat slips were damaged by "flood" is an improper statement of the facts underlying the Claim.

45. Defendant has failed to pay Plaintiff a reasonable and fair amount for the Claim.

46. Plaintiff has demanded that Defendant properly pay the value of Plaintiff's Claim.

47. Defendant has unjustifiably refused to make the payments due to Plaintiff.

48. Defendant breached its Policy obligations in refusing to pay Plaintiff sums due under the Policy.

49. Defendant's refusal to properly pay Plaintiff's for the Claim is unjustified and improper and a breach of Defendant's contractual obligations to Plaintiff.

<u>FIRST CLAIM FOR RELIEF – BREACH OF CONTRACT</u>

50. The allegations set forth above are re-alleged and incorporated herein by reference as if fully set forth.

7

51. Pursuant to the terms of the Policy, Defendant was and is obligated to pay Plaintiff for the Claim including, but not limited to, proper payment to replace the damaged boat slips.

52. Plaintiff provided sufficient information for Defendant to make payment for the Claim or has offered to submit such documentation.

53. Defendant has continually and repeatedly failed to make a proper payment on the Claim despite having sufficient documentation to properly evaluate the Claim and make such payment.

54. Defendant breached various contractual duties owed to Plaintiff, expressed and implied by operation of law and by usage of trade, including but not limited to duties to:

    a) Make prompt payment to Plaintiff for the Claim per the terms of the Policy;

    b) Perform a prompt and proper investigation and evaluation of the Claim;

    c) To deal fairly with Plaintiff regarding the Claim;

    d) Fairly and accurately construe obligations and duties regarding the Claim;

    e) Comply in all respects with North Carolina's laws on claims handling, including, but not limited to N.C. Gen. Stat. § 58-63-15; and

    f) Otherwise deal in good faith with Plaintiff as it relates to the Claim.

55. Defendant's failure to make proper payment for the Claim is unjustified.

56. Defendant's actions as alleged herein in refusing to promptly investigate and evaluate the Claim and make proper payment to Plaintiff for the Claim constitutes a breach of Defendant's contractual duties, expressed and implied by law and such breach has directly, foreseeably and proximately resulted in damages unto Plaintiff as more fully set forth herein in an amount in excess of $25,000.00 and Plaintiff is entitled to recover of Defendant for such damages.

## SECOND, THIRD AND FOURTH CLAIMS FOR RELIEF - UNFAIR AND DECEPTIVE TRADE PRACTICES, BREACH OF DUTY OF GOOD FAITH AND FAIR DEALING, AND PUNITIVE DAMAGES

57. The allegations set forth above are re-alleged and incorporated herein by reference as if fully set forth.

58. Defendant is engaged in the business of insurance in the State of North Carolina.

59. The business of insurance qualifies as "in or affecting commerce."

60. At all times relevant, Defendant had a duty to act in good faith and fair dealing when handling the claims under the Policy.

61. At all times relevant, Defendant had a statutory duty to not misrepresent pertinent facts or insurance policy provisions relating to coverages at issue pursuant to N.C. Gen. Stat. § 58-63-15(11)(a).

62. At all times relevant, Defendant had a statutory duty to adopt and implement standards for the prompt and investigation of the Claim pursuant to N.C. Gen. Stat. § 58-63-15(11)(c)

63. At all times relevant, Defendant had a duty to not refuse to pay the Claim without conducting a reasonable investigation pursuant to N.C. Gen. Stat. § 58-63-15(11)(d).

64. Defendant breached the foregoing statutory duties in the course of its handling of the Claim by engaging in the acts and practices as more fully alleged above.

65. Defendant's statutory violations of N.C. Gen. Stat. § 58-63-15(11) and its subparts constitute violations of Chapter 75 of the North Carolina General Statutes including N.C. Gen. Stat. § 75-1.1.

66. As a direct and proximate result of Defendant's statutory violations of N.C. Gen. Stat. § 58-63-15(11) and its subparts, and therefore Defendant's violations of Chapter 75 including

N.C. Gen. Stat. § 75-1.1, Plaintiff has foreseeably suffered damages and is entitled to recover of Defendant for such damages as set forth above including but not limited to:

   a) The benefits due pursuant to the Claim and the Policy plus interest at the legal rate;
   b) Attorney's fees and litigation expenses;
   c) Treble damages pursuant to N.C. Gen. Stat. § 75-16; and
   d) Interest on the aforesaid damages at the North Carolina legal rate.

67. The acts as alleged herein constitute aggravated and outrageous conduct, a degree of neglect that indicates a reckless indifference to the consequences, oppression, capriciousness, and/or willfulness. These acts, as well as others alleged herein, constitute a refusal to exercise good faith in the handling of an insurance claim proximately causing damage to Plaintiff as more fully set forth above.

68. Under North Carolina law, an insurer who does not act in good faith is guilty of bad faith.

69. Defendant's conduct as described above constitutes a breach of Defendant's duty of good faith and fair dealing to Plaintiff.

70. The acts alleged herein were willful, wanton, or intentionally wrongful such that punitive damages should be imposed against Defendant under N.C. Gen. Stat. § 1D-1 *et seq*.

## FIFTH CLAIM FOR RELIEF – DECLARATORY RELIEF

71. The allegations set forth above are re-alleged and incorporated herein by reference as if fully set forth.

72. Plaintiff, pursuant to N.C. Gen. Stat. § 1-253, complains of Defendant and seeks declaratory relief.

10

Case 1:26-cv-00017-MR-WCM    Document 1-1    Filed 01/14/26    Page 10 of 19

73. This action sets forth a claim for declaratory relief with respect to the applicability and interpretation of contracts of insurance between the parties, wherein the terms and conditions of said contracts of insurance govern Plaintiff's Claim and damages.

74. There exists an actual and justiciable controversy between Plaintiff and Defendant as to the applicability of the Policy to Plaintiff's Claim for damages.

75. Plaintiff is entitled to, and pray for, declaratory judgment and relief that Defendant is obligated to pay Plaintiff for Plaintiff's Claim for damages, plus interest at the legal rate.

## CONDITIONS PRECEDENT

76. All conditions precedent to Plaintiff's right to recover under the terms of the Policy have been fully performed by Plaintiff or have been waived by Defendant.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays unto the Court as follows:

1. That Plaintiff have and recover judgment against Defendant for damages in an amount in excess of $25,000.00 plus pre-judgment and post-judgment interest as allowed by law along with reasonable attorneys' fees and cost as allowed by law;

2. Treble damages pursuant to N.C. Gen. Stat. § 75-16 plus attorneys' fees and costs;

3. Punitive damages as allowed by law;

4. That the Court enter a judgment declaring that Plaintiff's Claim is covered under the terms of the Policy;

5. For a trial by jury on all issues so triable; and

6. For such other and further relief as the Court deems just and proper.

This the 9th day of December, 2025.

*Attorneys For Plaintiff*

/s/ J. Michael Malone
J. Michael Malone, Esq.
NC State Bar No.: 26512
Hendren Redwine & Malone, PLLC
4600 Marriott Drive, Suite 150
Raleigh, NC  27612
Telephone (919) 573-1423
Facsimile (919) 420-0475
Email: mmalone@hendrenmalone.com

Exhibit 1



Alexander E. Davis  |  Partner
Direct 336.419.4909  |  aedavis@goldbergsegalla.com

October 22, 2025

**VIA REGULAR MAIL AND ELECTRONIC MAIL TO:**
J. Michael Malone, Esq.
Hendren, Redwine & Malone, PLLC
4600 Marriott Drive, Ste. 150
Raleigh, NC 27612
mmalone@hendrenmalone.com

| | | |
|---|---|---|
| Re: | Insurer: | **Philadelphia Indemnity Insurance Company** |
| | Policy No.: | **PHPK2642726** |
| | Insured: | **The Arbors at Lake James POA** |
| | Date of Loss: | **September 27, 2024** |
| | Claim No.: | **PHPU24111685318** |

Dear Mr. Malone:

      Our firm has been retained to represent Philadelphia Indemnity Insurance Company ("Philadelphia") with respect to the investigation of the above-referenced claim. Please allow this correspondence to serve as a response to your June 4, 2025 letter, and to more plainly address Philadelphia's coverage analysis with regard to the assertions therein. While we believe that a letter writing campaign is often not fruitful and encourage further dialogue with regard to this claim, Philadelphia feels that it is important to address certain assertions in your June 4, 2025 letter ("June Correspondence").

      The June Correspondence takes issue with Philadelphia's determination that the damage to the boat slips at issue in this claim ("the boat slips") was caused by "water," a peril which you and Philadelphia agree is not covered under the above-referenced policy ("the Policy"), except with regard to the $30,000 coverage in the Elite Property Enhancement in the Policy. More specifically, the June Correspondence asserts that the cause of loss for the boat slips was caused by "water" as defined in the Policy, but rather "by wind and current." As set forth below, this assertion has no basis in law or fact.

      The June Correspondences concedes that there is no coverage for "water." The Policy defines "water" as:

    **(1)** Flood, surface water, waves (including tidal wave and tsunami), tides, tidal water, overflow of any body of water, or spray from any of these, all whether or not driven by wind (including storm surge);

    **(2)** Mudslide or mudflow;

    **(3)** Water that backs up or overflows or is otherwise discharged from a sewer, drain, sump, sump pump or related equipment;

701 Green Valley Road, Suite 310, Greensboro, NC 27408-7030  |  336-419-4900  |  336-419-4950  |  **www.goldbergsegalla.com**
CALIFORNIA  |  CONNECTICUT  |  FLORIDA  |  ILLINOIS  |  NEW JERSEY  |  NEW YORK  |  NORTH CAROLINA  |  MARYLAND  |  MISSOURI  |  PENNSYLVANIA
53816897

 **(4)** Water under the ground surface pressing on, or flowing or seeping through:

  **(a)** Foundations, walls, floors or paved surfaces;

  **(b)** Basements, whether paved or not; or

  **(c)** Doors, windows or other openings; or

 **(5)** Waterborne material carried or otherwise moved by any of the water referred to in Paragraph **(1), (3)** or **(4),** or material carried or otherwise moved by mudslide or mudflow.

 This exclusion applies regardless of whether any of the above, in Paragraphs **(1)** through **(5),** is caused by an act of nature or is otherwise caused. An example of a situation to which this exclusion applies is the situation where a dam, levee, seawall or other boundary or containment system fails in whole or in part, for any reason, to contain the water. . . .

 In support of the contention that the damage here was not caused by "flood," the June Correspondence cites to two (2) cases discussing "flood." Neither case, however, interprets a policy with similar language to the Policy here. Indeed, the bases for the decisions in both cases cited were based on the specific language of those policies, which language is not present in the Philadelphia policy and, therefore, is of no moment. Similarly, the case law interpreting "surface waters" is not only taken out of context from a non-insurance case, but is also no longer good law. Further, nothing in the quoted definitions of "waves" offer any support for the position that this loss was the result of "wind" and/or "current." Indeed, as noted in the Policy, flood water, surface water, waves, and other "water" is excluded from the Policy, whether or not it is wind-driven.

 Although the June Correspondence spends several paragraphs attempting to argue that the loss of the boat slips was not the result of "flood," it is clear from the factual evidence here that claim is simply untenable. Initially, the June correspondence itself includes photographs showing the docks were washed from their initial location and came to rest "downstream," of their original location, on dry land where the flood waters had receded. Nothing in the photographs or the letter supports a claim that the loss was the result of "wind" or "current." Indeed, the June correspondence simply states that "we believe" this is the case, without providing any evidence to demonstrate a basis for such a claim.

 In fact, contrary to this assertion, there is ample evidence that the damage was the result of "flood." This includes not only the very photographs provided in the June correspondence, but also the weather data from the area.[1] This data shows that the wind speeds at the location of the loss were moderate, with gusts peaking at only approximately 45 mph. Over approximately three

---

[1] This data is set forth in a report prepared by Forensic Weather Consultants, and included as an attachment hereto.

October 22, 2025
Page 3

days, however, from September 24-27, 2024, 15.07" of rain fell in the area of the boat slips. Further, water gage readings in locations closest to the boat slips showed 10.8 foot increase in gage height in only six hours, and a 29.3 foot increase in gage heigh over 28 ½ hours before the gages failed. Therefore, it is clear from the factual evidence a this location that the loss of the boat slips was the result of "flood" as defined by the Policy. Therefore, there is no further coverage for the loss pursuant to the plain language of the Policy.

The June Correspondence also asserts that the damage to the boat slips was the result of more than one "occurrence" pursuant to the Policy. However, this assertion is directly contrary to established North Carolina law. *See, e.g. Hyosung USA Inc. v. Travelers Prop. Cas. Co. of Am.*, 2021 NCBC 81, 2021 NCBC LEXIS 115 (2021) (holding that multiple instances of damage to property, even occurring a week apart, were caused by a windstorm and, therefore constituted a single "occurrence"). Here, the only "occurrence" was Hurricane Helene, and the insured is not entitled to recovery for multiple alleged "occurrences" under the Policy.

## CONCLUSION

Again, Philadelphia stands by its prior coverage determination at this time. However, Philadelphia would be happy to discuss its coverage analysis or other issues relating to the claim at your convenience, to the extent you have additional questions or any further information you would like Philadelphia to consider.

Please be advised that Philadelphia further incorporates its prior correspondences and coverage determinations as if set forth herein. Philadelphia continues to reserve all rights under the Policy, as set out above, and in its prior correspondences, including the right to exercise any right under the Policy or at law.

Please do not hesitate to contact me if you have any questions about the claim or any questions or comments regarding this letter. As noted above, should you or your client have any additional information or materials that you would like Philadelphia to consider relating to the claim, please do not hesitate to contact me.

Very truly yours,

**GOLDBERG SEGALLA LLP**

Alexander E. Davis

AED

53816897

| STATE OF NORTH CAROLINA | File No. 25CV002184-580 |
|---|---|
| McDowell County | In The General Court Of Justice<br>☐ District  ☒ Superior Court Division |

| Name Of Plaintiff |
|---|
| The Arbor at Lake James Property Owners' Association, Inc. |
| Address |
| c/o Hendren Redwine & Malone, PLLC; 4600 Marriott Dr. Ste 150 |
| City, State, Zip |
| Raleigh, NC 27612 |

**VERSUS**

**CIVIL SUMMONS**
☐ ALIAS AND PLURIES SUMMONS (ASSESS FEE)

G.S. 1A-1, Rules 3 and 4

| Name Of Defendant(s) | Date Original Summons Issued |
|---|---|
| Philadelphia Indemnity Insurance Company | |
| | Date(s) Subsequent Summons(es) Issued |

**To Each Of The Defendant(s) Named Below:**

| Name And Address Of Defendant 1 | Name And Address Of Defendant 2 |
|---|---|
| Philadelphia Indemnity Insurance Company<br>c/o The Commissioner of Insurance of The State of North Carolina<br>1201 Mail Service Center<br>Raleigh, NC 27699-1201 | |

⚠ **IMPORTANT! You have been sued!** These papers are legal documents, DO NOT throw these papers out! You have to respond within 30 days. You may want to talk with a lawyer about your case as soon as possible, and, if needed, speak with someone who reads English and can translate these papers!

**¡IMPORTANTE! ¡Se ha entablado un proceso civil en su contra!** Estos papeles son documentos legales. ¡NO TIRE estos papeles!
Tiene que contestar a más tardar en 30 días. ¡Puede querer consultar con un abogado lo antes posible acerca de su caso y, de ser necesario, hablar con alguien que lea inglés y que pueda traducir estos documentos!

**A Civil Action Has Been Commenced Against You!**

You are notified to appear and answer the complaint of the plaintiff as follows:

1. Serve a copy of your written answer to the complaint upon the plaintiff or plaintiff's attorney within thirty (30) days after you have been served. You may serve your answer by delivering a copy to the plaintiff or by mailing it to the plaintiff's last known address, and
2. File the original of the written answer with the Clerk of Superior Court of the county named above.

If you fail to answer the complaint, the plaintiff will apply to the Court for the relief demanded in the complaint.

| Name And Address Of Plaintiff's Attorney (if none, Address Of Plaintiff) | Date Issued | Time |
|---|---|---|
| J. Michael Malone<br>Hendren Redwine & Malone, PLLC<br>4600 Marriott Drive, Suite 150<br>Raleigh, NC 27612 | 12/9/2025 | 2:48:52 pm ☐ AM ☐ PM |
| | Signature | /s/ Heather Holland |
| | ☐ Deputy CSC  ☒ Assistant CSC  ☐ Clerk Of Superior Court | |

| ☐ **ENDORSEMENT (ASSESS FEE)**<br>This Summons was originally issued on the date indicated above and returned not served. At the request of the plaintiff, the time within which this Summons must be served is extended sixty (60) days. | Date Of Endorsement | Time ☐ AM ☐ PM |
|---|---|---|
| | Signature | |
| | ☐ Deputy CSC  ☐ Assistant CSC  ☐ Clerk Of Superior Court | |

**NOTE TO PARTIES:** Many counties have **MANDATORY ARBITRATION** programs in which most cases where the amount in controversy is $25,000 or less are heard by an arbitrator before a trial. The parties will be notified if this case is assigned for mandatory arbitration, and, if so, what procedure is to be followed.

(Over)

AOC-CV-100, Rev. 4/18
© 2018 Administrative Office of the Courts

# RETURN OF SERVICE

I certify that this Summons and a copy of the complaint were received and served as follows:

## DEFENDANT 1

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

## DEFENDANT 2

| Date Served | Time Served | ☐ AM ☐ PM | Name Of Defendant |

☐ By delivering to the defendant named above a copy of the summons and complaint.

☐ By leaving a copy of the summons and complaint at the dwelling house or usual place of abode of the defendant named above with a person of suitable age and discretion then residing therein.

☐ As the defendant is a corporation, service was effected by delivering a copy of the summons and complaint to the person named below.

*Name And Address Of Person With Whom Copies Left (if corporation, give title of person copies left with)*

☐ Other manner of service *(specify)*

☐ Defendant WAS NOT served for the following reason:

| Service Fee Paid $ | Signature Of Deputy Sheriff Making Return |
| Date Received | Name Of Sheriff (type or print) |
| Date Of Return | County Of Sheriff |

AOC-CV-100, Side Two, Rev. 4/18
© 2018 Administrative Office of the Courts

# STATE OF NORTH CAROLINA

McDowell County

File No. 25CV002184-580

In The General Court Of Justice
☐ District  ☒ Superior Court Division

**Name And Address Of Plaintiff 1**
The Arbor at Lake James Property Owners' Association, Inc.
c/o Hendren Redwine & Malone, PLLC
4600 Marriott Dr., Ste 150, Raleigh, NC 27612

**Name And Address Of Plaintiff 2**

# GENERAL
## CIVIL ACTION COVER SHEET
☒ INITIAL FILING ☐ SUBSEQUENT FILING

Rule 5(b), General Rules of Practice For Superior and District Courts

**Name And Address Of Attorney Or Party, If Not Represented (complete for initial appearance or change of address)**
J. Michael Malone
4600 Marriott Drive, Suite 150
Raleigh, NC 27612

**VERSUS**

**Name Of Defendant 1**
Philadelphia Indemnity Insurance Company

| Telephone No. | Cellular Telephone No. |
|---|---|
| 919-573-1423 | 919-949-8133 |
| NC Attorney Bar No. | Attorney E-Mail Address |
| 26512 | mmalone@hendrenmalone.com |

**Summons Submitted** ☒ Yes ☐ No

☒ Initial Appearance in Case  ☐ Change of Address

**Name Of Defendant 2**

**Name Of Firm**
Hendren Redwine & Malone, PLLC

**FAX No.** 919-420-0475

**Counsel for**
☒ All Plaintiffs  ☐ All Defendants  ☐ Only *(list party(ies) represented)*

**Summons Submitted** ☐ Yes ☐ No

☒ Jury Demanded In Pleading
☐ Complex Litigation

☐ Amount in controversy does not exceed $15,000
☐ Stipulate to arbitration

## TYPE OF PLEADING

*(check all that apply)*
- ☐ Amend (AMND)
- ☐ Amended Answer/Reply (AMND-Response)
- ☐ Amended Complaint (AMND)
- ☐ Assess Costs (COST)
- ☐ Answer/Reply (ANSW-Response) *(see Note)*
- ☐ Change Venue (CHVN)
- ☒ Complaint (COMP)
- ☐ Confession Of Judgment (CNJF)
- ☐ Consent Order (CONS)
- ☐ Consolidate (CNSL)
- ☐ Contempt (CNTP)
- ☐ Continue (CNTN)
- ☐ Compel (CMPL)
- ☐ Counterclaim (CTCL) *Assess Court Costs*
- ☐ Crossclaim *(list on back)* (CRSS) *Assess Court Costs*
- ☐ Dismiss (DISM) *Assess Court Costs*
- ☐ Exempt/Waive Mediation (EXMD)
- ☐ Extend Statute Of Limitations, Rule 9 (ESOL)
- ☐ Extend Time For Complaint (EXCO)
- ☐ Failure To Join Necessary Party (FJNP)

*(check all that apply)*
- ☐ Failure To State A Claim (FASC)
- ☐ Implementation Of Wage Withholding In Non-IV-D Cases (OTHR)
- ☐ Improper Venue/Division (IMVN)
- ☐ Including Attorney's Fees (ATTY)
- ☐ Intervene (INTR)
- ☐ Interplead (OTHR)
- ☐ Lack Of Jurisdiction (Person) (LJPN)
- ☐ Lack Of Jurisdiction (Subject Matter) (LJSM)
- ☐ Modification Of Child Support In IV-D Actions (MSUP)
- ☐ Notice Of Dismissal With Or Without Prejudice (VOLD)
- ☐ Petition To Sue As Indigent (OTHR)
- ☐ Rule 12 Motion In Lieu Of Answer (MDLA)
- ☐ Sanctions (SANC)
- ☐ Set Aside (OTHR)
- ☐ Show Cause (SHOW)
- ☐ Transfer (TRFR)
- ☐ Third Party Complaint *(list Third Party Defendants on back)* (TPCL)
- ☐ Vacate/Modify Judgment (VCMD)
- ☐ Withdraw As Counsel (WDCN)
- ☐ Other *(specify and list each separately)*

**NOTE:** *All filings in civil actions shall include as the first page of the filing a cover sheet summarizing the critical elements of the filing in a format prescribed by the Administrative Office of the Courts, and the Clerk of Superior Court shall require a party to refile a filing which does not include the required cover sheet. For subsequent filings in civil actions, the filing party must either include a General Civil (AOC-CV-751), Motion (AOC-CV-752), or Court Action (AOC-CV-753) cover sheet.*

AOC-CV-751, Rev. 1/14
© 2014 Administrative Office of the Courts

(Over)

Case 1:26-cv-00017-MR-WCM    Document 1-1    Filed 01/14/26    Page 18 of 19
Electronically Filed Date: 12/9/2025 2:26 PM McDowell Superior Court County Clerk of Superior Court

| | CLAIMS FOR RELIEF | |
|---|---|---|
| ☐ Administrative Appeal (ADMA) | ☐ Limited Driving Privilege - Out-Of-State Convictions (PLDP) | ☐ Product Liability (PROD) |
| ☐ Appointment Of Receiver (APRC) | | ☐ Real Property (RLPR) |
| ☐ Attachment/Garnishment (ATTC) | ☐ Medical Malpractice (MDML) | ☐ Specific Performance (SPPR) |
| ☐ Claim And Delivery (CLMD) | ☐ Minor Settlement (MSTL) | ☐ Other *(specify and list each separately)* |
| ☐ Collection On Account (ACCT) | ☐ Money Owed (MNYO) | UDAP, Declaratory Judgment |
| ☐ Condemnation (CNDM) | ☐ Negligence - Motor Vehicle (MVNG) | |
| ☒ Contract (CNTR) | ☐ Negligence - Other (NEGO) | |
| ☐ Discovery Scheduling Order (DSCH) | ☐ Motor Vehicle Lien G.S. 44A (MVLN) | |
| ☐ Injunction (INJU) | ☐ Possession Of Personal Property (POPP) | |

| Date | Signature Of Attorney/Party |
|---|---|
| 12/9/2025 | *(signed)* |

**FEES IN G.S. 7A-308 APPLY**
Assert Right Of Access (ARAS)
Substitution Of Trustee (Judicial Foreclosure) (RSOT)
Supplemental Procedures (SUPR)

**PRO HAC VICE FEES APPLY**
Motion For Out-Of-State Attorney To Appear In NC Courts In A Civil Or Criminal Matter (Out-Of-State Attorney/Pro Hac Vice Fee)

| No. | ☐ Additional Plaintiff(s) |
|---|---|
| | |
| | |
| | |
| | |
| | |

| No. | ☐ Additional Defendant(s)     ☐ Third Party Defendant(s) | Summons Submitted |
|---|---|---|
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |
| | | ☐ Yes ☐ No |

*Plaintiff(s) Against Whom Counterclaim Asserted*



*Defendant(s) Against Whom Crossclaim Asserted*



AOC-CV-751, Side Two, Rev. 1/14
© 2014 Administrative Office of the Courts